**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUSTIN P. RUDIN,<br><br>Plaintiff,<br><br>v.<br><br>GUST CALLAS, individually and as Co-Trustee of the George Callas Revocable Trust and the Athena Callas Revocable Trust,<br><br>and<br><br>RICHARD K. WARFIELD, individually and as Co-Trustee of the George Callas Revocable Trust and the Athena Callas Revocable Trust,<br><br>Defendants. | ) | CASE NO.<br><br>JUDGE |

**COMPLAINT**
**(Jury Demand Endorsed Hereon)**

Plaintiff Justin P. Rudin, by his attorney, for his Complaint against Defendants Gust Callas and Richard K. Warfield, individually and as Co-Trustees of the George Callas Revocable Trust and the Athena Callas Revocable Trust, states as follows:

## NATURE OF THE ACTION

1. This is an action by a trust beneficiary against the two co-trustees of the revocable trusts of his grandparents, George Callas and Athena Callas, for breach of trust and breach of fiduciary duty. Each trust instrument allocates 20 percent of the trust estate to Plaintiff, directs the trustee to create a separate trust for his benefit upon the death of the surviving grantor, and directs the trustee to make mandatory distributions of principal to him when he attains the ages of 35, 40, and 45.

2. More than nine years have passed since the death of the surviving grantor. Defendants have never created the separate trust that each instrument requires, and they have admitted in writing that they never created it. They have instead administered two commingled brokerage accounts in which no beneficiary's share is segregated, computed Plaintiff's mandatory distributions against pools and valuation dates of their own selection, completed the age 35 distribution nearly four years after it became due and in a total amount below their own written computations, omitted $686,952.00 of trust assets from the age 40 computation, concealed from Plaintiff two brokerage accounts and a trust instrument, taken undisclosed compensation from trust property, and refused every one of Plaintiff's thirteen written demands for reports and an accounting.

3. Plaintiff seeks a money judgment against Defendants personally, an order compelling Defendants to render the reports and accountings that the trust instruments and the Ohio Trust Code require, an order compelling Defendants to create and fund the separate trust holding Plaintiff's 20 percent share under the administration of an independent trustee, and, in the alternative, the removal of Defendants as trustees of that separate trust.

**PARTIES**

4. Plaintiff Justin P. Rudin is a citizen of the State of California. He is a named beneficiary of each trust. Article XVI(a)(9) of each instrument provides that Plaintiff "shall be considered my lineal descendant and natural born child of my deceased daughter, Becka C. Rudin," for all purposes under the instrument.

5. Defendant Gust Callas is a citizen of the State of Ohio and resides in Stark County, Ohio. He is an attorney admitted to practice in Ohio and a nephew of the grantors. He

has served as a co-trustee of each trust at all times material to this Complaint, and he is sued individually and in his capacity as Co-Trustee of each trust.

6. Defendant Richard K. Warfield is a citizen of the State of Ohio and resides in Summit County, Ohio. He is a certified public accountant practicing in Hudson, Summit County, Ohio. He has served as a co-trustee of each trust at all times material to this Complaint, and he is sued individually and in his capacity as Co-Trustee of each trust.

7. At all times material to this Complaint, Defendants were the only persons serving as trustees of either trust. Each act and omission alleged in this Complaint was performed by both Defendants, or by one Defendant with the knowledge and acquiescence of the other.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the action is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiff is a citizen of California. Both Defendants are citizens of Ohio. Plaintiff's damages, computed from documents Defendants themselves prepared or transmitted, exceed $242,500.82.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because both Defendants reside in this district, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this district, where the grantors were domiciled, where the trust instruments were made, where trust real property is situated, and where Defendants administered the trusts.

## FACTUAL ALLEGATIONS

### The Trusts

10. George Callas and Athena Callas, husband and wife, were residents of Middleburg Heights, Cuyahoga County, Ohio. Each created a revocable trust by agreement dated May 1, 2003. Each amended and restated his or her trust in its entirety effective April 22, 2008 (the "Restatements"), and each further amended the Restatement by an amendment dated January 2013 (the "2013 Amendments"). True and correct copies of the Restatements and the 2013 Amendments are attached as Exhibits A through D. Ohio law governs the construction, validity, and administration of each trust.

11. Article VII(a) of each Restatement directs that upon the death of both grantors "the Trustee shall divide the trust property" into six separate trust estates and allocates "Twenty percent (20%) thereof to the Justin P. Rudin Trust." It further directs that each such trust estate "shall be held, managed and disposed of as a separate trust estate" for the benefit of the named beneficiary.

12. Each 2013 Amendment revokes Article VII and replaces it. Subparagraph (a)(vi) of each 2013 Amendment directs: "The Trustee shall create a separate Trust for the benefit of my grandson, Justin P. Rudin, if he shall survive the time for this Trust division. The Trustee shall allocate twenty percent (20%) of the remaining Trust estate to the Trust created for Justin."

13. Article VII(c) of each Restatement, titled "Mandatory Distributions to Named Beneficiaries," requires the trustee to distribute to Plaintiff one third of the trust principal at age 35, one half of the trust principal at age 40, and the balance at age 45, in each case measured by "the Trust principal at the prior year end valuation date." Subparagraph (b)(ii) of each 2013 Amendment directs that when Plaintiff attains each of those ages the trustee "shall distribute" the corresponding fraction of "the remaining Trust estate held for the benefit of such

grandchild." Neither instrument authorizes the trustee to select a valuation date or to measure a distribution against any pool other than the separate trust estate held for Plaintiff.

14. Article XV(a) of each Restatement requires the trustee to "keep accurate books of account with respect to each trust estate" and, after the grantor's death, to "at least annually render an account of the Trustee's administration" to each current beneficiary. Article XV(c) of each Restatement requires the trustee, upon request, to render an annual statement "showing all receipts, disbursements and other transactions affecting each trust estate and an annual inventory of its assets."

**The Deaths of the Grantors**

15. Athena Callas died on April 5, 2015. George Callas, the surviving grantor, died after December 31, 2016 and on or before May 4, 2017. Plaintiff pleads the dates of death on information and belief from workpapers and asset listings that Defendant Warfield prepared, because the records establishing the dates with certainty are in Defendants' possession and have been withheld from Plaintiff.

16. Upon the death of George Callas, each trust became irrevocable, Plaintiff became a current beneficiary of each trust, and the duty of the trustees to divide the trust property and to create and fund a separate trust for Plaintiff's benefit arose under the terms of each instrument.

17. Plaintiff attained the age of 35 on October 27, 2018, attained the age of 40 on October 27, 2023, and will attain the age of 45 on October 27, 2028.

**The Failure to Create the Separate Trust**

18. Defendants have never created a separate trust for Plaintiff's benefit under either instrument. No such trust exists as of the date of this Complaint. No trust instrument, taxpayer

identification number, account registration, ledger, asset listing, or tax return of either trust identifies any separate trust holding Plaintiff's share.

19. In place of the separate trust, Defendants have administered two commingled brokerage accounts at Charles Schwab & Co., Inc., one titled to each trust, in which no asset is segregated by beneficiary and no beneficiary's share is separately held, invested, valued, or accounted for.

20. On April 2, 2019, James Kotagides of TTG Financial, the investment adviser Defendants selected for the two accounts, wrote to Defendants and Plaintiff that "[a]ll other funds that are due Justin are co-mingled within the two Callas trust main accounts," that "[t]here is no segregation of funds by beneficiary in these accounts," and that "[w]e do not know the amount that Justin is due." Neither Defendant corrected, qualified, or disavowed those statements.

21. On April 11, 2024, Defendant Warfield wrote to Plaintiff, copying Defendant Callas: "There are no separate trusts set up with in the (2) big Callas trusts and that allows the allocation to be done the way I did it for now."

22. On May 16, 2024, Plaintiff demanded in writing that Defendants divide the trusts into separate trusts for each beneficiary. On May 17, 2024, Defendant Callas replied in full: "Justin. The trusts will continue to be administered as written. Please give me a call if you have any questions." On May 23, 2024, answering Plaintiff's renewed written demand, Defendant Callas replied in full: "Justin. Your final distribution will be at age 45. Please call me with any questions."

23. On June 30, 2026, Defendant Callas wrote to Plaintiff concerning his obligations as co-trustee: "If you feel that those obligations have not been fulfilled, you can take whatever appropriate action you feel is necessary." No separate trust has been created since.

**The Undisclosed Accounts**

24. Defendants represented to Plaintiff that the trusts and the entities whose stock the trusts hold maintain three brokerage accounts at Charles Schwab & Co., Inc. There are six. Defendants never disclosed three of them to Plaintiff in any account, asset listing, worksheet, statement, tax document, or letter.

25. The undisclosed account ending 5547 is registered in the names of both Defendants as co-trustees and bears Plaintiff's own given name in its registration. Its address of record is Defendant Warfield's accounting office. It held only uninvested cash of approximately $6,000 for more than three years. On or about September 30, 2022, approximately $111,479 was deposited into it. On or about October 31, 2022, $117,652.40 was withdrawn from it, leaving $15.08. Plaintiff received no part of that withdrawal, and neither Defendant has ever identified the person or account that received it or accounted to Plaintiff for it.

26. The undisclosed account ending 2033 is registered in the names of both Defendants as co-trustees and bears the given name of Plaintiff's brother, Matthew G. Rudin. During the same period in which the account bearing Plaintiff's name stood uninvested and then empty, the account bearing his brother's name was continuously funded and continuously invested.

27. The undisclosed account ending 2032 is registered "ATHENA CALLAS LIVING TRUST U/A DTD 03/07/2013," identifying a trust instrument dated March 7, 2013 that Defendants have never produced or disclosed to Plaintiff. The single statement of that account

Defendants have produced reports year to date 2017 income of $22,410.79 and the transfer of $18,506.78 to the main Athena trust account in October 2017, when the account was closed. Defendants have never accounted for the property held under that instrument.

**The Age 35 Distribution**

28. The mandatory distribution of one third of the principal of Plaintiff's separate trust estate under each instrument became due and payable on October 27, 2018. Defendants paid Plaintiff nothing on that date and nothing in that calendar year. In December 2018, after Plaintiff requested funds to retire student loan debt, a check to Plaintiff for $76,000.00 was prepared for overnight delivery, and Defendant Warfield directed that it be held until January 2019. A $76,000.00 check was deposited to Plaintiff’s account on January 9, 2019. In November 2019, Defendants sent Plaintiff a check for $10,000.00 drawn payable to a trust account rather than to Plaintiff and endorsed by Defendant Warfield. Plaintiff’s bank refused the deposit because the item was payable to a trust account, a replacement check was issued from the Athena Callas Revocable Trust, and $10,000.00 was deposited to Plaintiff’s account on December 10, 2019. Those two payments, totaling $86,000.00, are the only payments Defendants made on account of the age 35 distribution before October 2022.

29. On at least six occasions between November 2018 and May 2021, Defendant Warfield computed the age 35 distribution on asset listings he prepared and Defendant Callas reviewed. The listings dated October 9, 2019 computed a combined distribution of $354,402.67. Every one of the six computations exceeds the amount Defendants later paid.

30. The listings dated April 30, 2022, the last prepared before payment, omit the distribution column. Those same listings state combined 20 percent values for Plaintiff of $1,198,510.

31. Plaintiff requested the distribution in writing on June 22, 2022 and repeated the request in writing on July 1, July 7, July 26, and August 22, 2022. Defendant Callas selected September 15, 2022 as the valuation date after the figures were known. The record made by TTG Financial states: “Gust suggests that Sept. 15th would be a better date for the distribution calculation.” September 15, 2022 is not a prior year end valuation date and is not a date either instrument permits.

32. The distribution worksheet dated September 19, 2022 used a base of $4,244,833.44 consisting of the balances of the two commingled brokerage accounts and nothing else. Every other asset of both trusts, including all real property, all closely held stock, all partnership interests, the royalty interest, and all bank accounts, was excluded. The worksheet took 20 percent of the base, then one third of that product, or $282,988.90, and deducted a credit of $60,000.00 captioned “Previous Distributions,” although the payments actually made on account of the age 35 distribution total $86,000.00, a figure the credit matches neither in whole nor in part, and no check, wire confirmation, statement entry, ledger entry, or tax record in Defendants' production supports the $60,000.00 figure, yielding a net of $222,988.90.

33. The only explanation either Defendant has given for the exclusions is Defendant Warfield's statement of September 20, 2022: “there are still some rentals in both trusts my friend that are not liquid right now. The 2 brokerage accounts are liquid and we can distribute funds from those types of assets.” Neither instrument confines a mandatory distribution to assets the trustee considers liquid.

34. Plaintiff objected in writing to the base and the valuation date on September 20, 2022, and on September 21, 2022 quantified the omitted assets in writing using Defendants' own listings. Neither Defendant responded. On October 3, 2022, Defendants caused $222,988.90 to

be wired to Plaintiff, three years and eleven months after the distribution became due. Together with the payments deposited on January 9, 2019 and December 10, 2019, Defendants have paid a total of $308,988.90 on account of the age 35 distribution. Measured against Defendants' own computation of October 9, 2019, the shortfall is not less than $45,413.77.

**The Age 40 Distribution**

35. The mandatory distribution of one half of the remaining principal of Plaintiff's separate trust estate became due and payable on October 27, 2023. Defendant Warfield prepared a one page worksheet of that date stating four components and nothing else: Beaver Valley, $259,917.06; Athena Callas Trust, $1,960,352.59; George Callas Trust, $2,329,153.94; and Raymond James, $211,123.86, totaling $4,760,547.45. The worksheet stated 20 percent of the total as $952,109.49 and one half of that share as $476,054.75, which Defendants paid in November 2023.

36. The base omits assets that Defendant Warfield himself valued on his own asset listings dated April 30, 2023, six months earlier: real property at 7056 Pearl Road, Middleburg Heights, carried at $165,700.00; real property at 3946 Royalwood Road, North Royalton, carried at $54,300.00; and the trusts' interests in Royalview Estates, Inc., carried at $183,951.00 and $283,001.00. The omitted assets total $686,952.00 at Defendants' own carrying values. One half of Plaintiff's 20 percent interest in that sum is $68,695.20, which Defendants have never paid.

37. More than a year before the worksheet, Defendant Callas communicated to Plaintiff in writing a broker's figure of $800,000 for the North Royalton parcel and $225,000 for the Pearl Road parcel, writing that “Bill May has floated the number of $800,000” and that “Bill May has floated the number of $225,000.” The age 40 base nonetheless carried both parcels at nothing.

38. The Beaver Valley component is the balance of a single brokerage account titled to Beaver Valley Estates, Inc., not the value of the corporation, whose own balance sheet dated March 31, 2024 states total assets of $881,080.00. Defendant Warfield signs that corporation's income tax returns as its President.

39. Plaintiff requested the breakdown of the age 40 computation in writing on October 2, 2023, October 31, 2023, and May 16, 2024. Neither Defendant furnished any breakdown, any schedule of the assets composing the four components, or any explanation of the omissions, then or at any time since.

**The Remaining Share**

40. On Defendant Warfield's own arithmetic, the November 2023 payment of exactly one half left a remaining share for Plaintiff of $476,054.75. Defendant Warfield thereafter reported Plaintiff's remaining share at $258,512.00 as of April 30, 2025 and at $273,043.00 as of April 30, 2026, a decline of 45.70 percent in nineteen months.

41. Over the same period the pool rose. The spreadsheet Defendant Callas transmitted to Plaintiff on June 30, 2026 reports total assets of $4,976,040.74, which is $215,493.29 higher than the base Defendants used in October 2023. A fixed share of a rising pool does not fall by 45.70 percent.

42. The June 30, 2026 spreadsheet applies exactly 5.6000 percent to each of its 292 line items as Plaintiff's share. No provision of either instrument and no document Defendants have produced derives that factor. One third of 20 percent of the reported pool is $331,736.05. The difference between that figure and the $273,043.00 Defendants report is $58,693.05. The spreadsheet is also internally inconsistent: its line items do not sum to its own stated totals, it

omits all real property, the Royalview interests, and the annuity, and its share column differs by $1,715.36 from the figure Defendant Warfield reported five days earlier.

**Self-Dealing and Undisclosed Compensation**

43. Defendant Warfield signs the federal fiduciary income tax return of each trust twice, once as the fiduciary and once as the paid preparer on behalf of his own firm, Warfield and Company CPA's, which prepared each return for a fee paid from trust property. He engaged his own firm, approved its work, and paid it from trust property without the documented approval of his co-trustee and without disclosure to Plaintiff. The brokerage account of the George Callas Revocable Trust is registered in care of his firm.

44. Defendant Warfield is President of Beaver Valley Estates, Inc., whose stock the trusts hold, and stands on both sides of every dealing between the corporation and the trusts. The corporation's books carry an undocumented intercompany obligation of $466,452.23, with no note, loan agreement, stated maturity, rate, or security, on which interest accrues out of the trusts. The Athena Callas Revocable Trust has paid utility and vehicle charges that Defendant Warfield coded on his own books to properties of the corporation.

45. Defendant Callas has at all material times administered the trusts on the letterhead of his law firm, Black, McCuskey, Souers & Arbaugh, LPA. In 2021, $15,727.31 was paid from trust property to that firm. The production contains no engagement letter, invoice, or description of services. On May 13, 2019, real property at 8281 York Road closed at $440,000, with cash to the seller of $404,020.37. The George Callas Revocable Trust owned one half of the seller's interest, and Defendant Callas appeared at the closing as counsel for the seller. Nothing in Defendants' production accounts for the trust's share of the proceeds.

46. In 2021 alone, $39,422.31 was paid from trust property to Defendants and to firms in which they hold interests. The 2023 fiduciary income tax return of each trust reports fiduciary fees totaling $7,000.00, matching paired checks of $3,500.00 drawn on each trust with no payee identified. Neither Defendant has ever disclosed to Plaintiff the amount, source, or basis of his compensation. Plaintiff demanded that disclosure in writing on May 24, 2023 and May 16, 2024. Neither demand was answered.

**The Refusal to Account**

47. Neither Defendant has ever rendered to Plaintiff an annual report or account for any year of either trust. What Plaintiff receives in a year is a Schedule K-1 and a request for money to pay the tax on the income it reports. Plaintiff has received no report of trust property, no statement of receipts or disbursements, no listing of assets, no market values, and no statement of either trustee's compensation.

48. Plaintiff demanded records, reports, and accountings in writing on May 24, 2023, June 9, 2023, October 2, 2023, October 31, 2023, April 18, 2024, May 16, 2024, March 10, 2026, March 23, 2026, April 16, 2026, May 12, 2026, May 28, 2026, June 5, 2026, and June 18, 2026. The June 18, 2026 demand identified R.C. 5808.13 and Article XV(c) of each Restatement and specified the categories of records sought. No demand produced a report, a statement, or a record.

49. On June 9, 2023, Defendant Warfield answered one demand: “Jim's office said the 2021, 2022, and 2023 reports are over 1,250 pages my friend. Do you really need them all?” The reports were never sent. Plaintiff received cover pages from which every page stating holdings, transactions, receipts, disbursements, and values had been withheld.

50. Because no separate trust existed, Defendant Warfield allocated the trusts' distributable net income by reference to distributions rather than to any separate trust estate, charging Plaintiff with tax on income the pooled accounts generated for other shares. He reissued the 2023 Schedules K-1 only after Plaintiff identified the error and pressed it, and he never corrected the 2022 allocation.

51. Defendants have never obtained an appraisal of any asset of either trust. Real property is carried on their listings at county auditor taxable values beneath Defendant Warfield's own printed footnote that “Tax value may not approximate market value. Market value may be higher.” A producing royalty interest was carried at no value on every listing from 2016 through 2022. A limited partnership interest carried at zero on every listing from 2016 forward was disposed of in 2021 for combined gain of $1,084,425, and on June 14, 2023 Defendant Warfield instructed the accountant to “just make the Crittenden Court Apt. value at zero on the last valuation report column.” Defendants paid the fiduciary income tax on that gain out of the commingled pool on May 2, 2022. Plaintiff's 20 percent share of that tax, $69,698.80, was never credited to him.

52. Each Defendant committed the acts and omissions alleged in this Complaint in bad faith and with reckless indifference to the purposes of the trusts and the interests of Plaintiff.

**COUNT I**
**Breach of Trust: Failure to Create and Fund the Separate Trust**
**(Against Both Defendants)**

53. Plaintiff incorporates by reference paragraphs 1 through 52 above.

54. R.C. 5808.01 requires a trustee to administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries. Article VII(a) of each Restatement and subparagraph (a)(vi) of each 2013 Amendment required Defendants, upon

the death of George Callas, to divide the trust property and to create and fund a separate trust for Plaintiff's benefit holding 20 percent of the trust estate.

55. Defendants have never performed that duty. Their failure is a continuing breach of trust within the meaning of R.C. 5810.01 that began at the death of George Callas and continues to the date of this Complaint.

56. Because no separate trust was created, every entitlement of Plaintiff has been computed against a commingled pool on valuation dates and bases of Defendants' own selection rather than against the principal of a trust held for him, and the mandatory distribution due at age 45 will be measured the same way unless Defendants are compelled to perform.

57. As a direct and proximate result of the breach, Plaintiff has been damaged in an amount not less than $242,500.82.

WHEREFORE, on Count I, Plaintiff demands judgment against Defendants Gust Callas and Richard K. Warfield, jointly and severally, for compensatory damages in an amount not less than $242,500.82, plus prejudgment interest, and an order under R.C. 5810.01(B)(4) and R.C. 5810.01(B)(10) compelling Defendants to create and fund a separate trust for Plaintiff's benefit holding 20 percent of the trust property of each trust and to deliver its administration to an independent trustee.

## COUNT II
## Breach of Trust: Failure to Make the Mandatory Distributions
## (Against Both Defendants)

58. Plaintiff incorporates by reference paragraphs 1 through 52 above.

59. Article VII(c) of each Restatement and subparagraph (b)(ii) of each 2013 Amendment required Defendants to distribute to Plaintiff one third of the principal of his separate trust estate upon his attaining age 35 and one half of the remaining principal upon his attaining age 40, measured in each case by the trust principal at the prior year end valuation date.

60. Defendants did not complete the age 35 distribution until three years and eleven months after it became due, measured it against a commingled pool from which every non-brokerage asset was excluded, valued it on a date Defendant Callas selected after the figures were known, and reduced it by a credit of $60,000.00 that matches no payment they made. The shortfall is not less than $45,413.77.

61. Defendants measured the age 40 distribution against a base that omitted $686,952.00 of assets Defendant Warfield had valued on his own listings six months earlier. The shortfall is not less than $68,695.20.

62. Defendants' conduct violated R.C. 5808.01 and the terms of each instrument and is a breach of trust within the meaning of R.C. 5810.01(A). As a direct and proximate result, Plaintiff has been damaged in an amount not less than $114,108.97, plus the loss of the use of each sum from the date it became due.

WHEREFORE, on Count II, Plaintiff demands judgment against Defendants Gust Callas and Richard K. Warfield, jointly and severally, for compensatory damages in an amount not less than $114,108.97, plus prejudgment interest from October 27, 2018 as to the age 35 component and from October 27, 2023 as to the age 40 component.

**COUNT III**
**Breach of Fiduciary Duties: Loyalty, Impartiality, Prudence, and Record-Keeping**
**(Against Both Defendants)**

63. Plaintiff incorporates by reference paragraphs 1 through 52 above.

64. As trustees, Defendants owed Plaintiff duties to administer the trusts solely in the interests of the beneficiaries, R.C. 5808.02(A) ; to act impartially among beneficiaries, R.C. 5808.03 ; to keep adequate records, keep trust property separate, and earmark trust property, R.C. 5808.10 ; and to invest and manage trust assets as a prudent investor would, R.C. 5809.02 through R.C. 5809.04.

65. Defendants breached the duty of loyalty by engaging and paying their own firms from trust property without disclosure, by taking undisclosed compensation, by standing on both sides of dealings between the trusts and Beaver Valley Estates, Inc., and by acting as counsel in a transaction in which a trust held a half interest in the seller. Each such transaction is presumed under R.C. 5808.02(C) to be affected by a conflict between personal and fiduciary interests.

66. Defendants breached the duty of impartiality by administering both trusts as a single undivided pool and by reporting Plaintiff's remaining share at a figure, produced by an unexplained 5.6000 percent factor, that is $58,693.05 below the most conservative computation their own records support, while the difference remains in the pool for the benefit of the other shares.

67. Defendants breached the duties of prudence and record-keeping by never obtaining an appraisal of any trust asset, by carrying producing assets at no value, by keeping no records from which any figure they reported to Plaintiff can be tested, by failing to earmark any asset as Plaintiff's, and by maintaining in place of his separate trust a brokerage sub-account that stood empty between distributions while it was charged advisory fees.

68. As a direct and proximate result of these breaches, Plaintiff has been damaged in an amount to be proved at trial, including 20 percent of every sum of undisclosed compensation and every improper payment taken from trust property, the $58,693.05 deficit in his reported remaining share, and his $69,698.80 share of the fiduciary income tax paid on gain from an asset with which he was never credited.

WHEREFORE, on Count III, Plaintiff demands judgment against Defendants Gust Callas and Richard K. Warfield, jointly and severally, for compensatory damages in an amount to be proved at trial, disgorgement of every profit either of them made by reason of the breaches under

R.C. 5810.02, reduction or denial of Defendants' compensation under R.C. 5807.08 and R.C. 5810.0 to the extent of Plaintiff's interest, and prejudgment interest.

**COUNT IV**
**Breach of Trust: Duty to Inform and Report; Action for an Accounting**
**(Against Both Defendants)**

69. Plaintiff incorporates by reference paragraphs 1 through 52 above.

70. R.C. 5808.13 requires a trustee to keep the current beneficiaries reasonably informed about the administration of the trust and the material facts necessary to protect their interests, and to respond promptly to a beneficiary's request for information. R.C. 5808.13 requires the trustee to send each current beneficiary, at least annually, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, and a listing of trust assets with market values where feasible. R.C. 5801.04 provides that the terms of a trust cannot override the trustee's duty to respond to such a request. Article XV(a) and Article XV(c) of each Restatement impose the same obligations by the terms of the instruments.

71. Defendants have never sent Plaintiff an annual report for any year of either trust, have never disclosed their compensation, concealed from Plaintiff two brokerage accounts and a trust instrument, and refused thirteen written demands for reports and records.

72. Defendants' conduct is a breach of trust within the meaning of R.C. 5810.01(A). Plaintiff has no adequate remedy at law. Without the reports, Plaintiff cannot identify the property in which his interest lies, cannot test the compensation Defendants have taken, and cannot measure the mandatory distribution that becomes due when he attains the age of 45.

WHEREFORE, on Count IV, Plaintiff demands judgment ordering Defendants Gust Callas and Richard K. Warfield to render to Plaintiff, within a time fixed by the Court, a full accounting of each trust for each year from the death of George Callas through the date of

judgment, including all receipts, disbursements, and transactions, a listing of trust assets and their market values, and the source and amount of each Defendant's compensation, and awarding Plaintiff his damages and costs.

**COUNT V**
**Removal of Trustees**
**(Against Both Defendants)**

73. Plaintiff incorporates by reference paragraphs 1 through 52 above.

74. R.C. 5807.06(B)(1) permits the court to remove a trustee who has committed a serious breach of trust. R.C. 5807.06(B)(3) permits the court to remove a trustee for unfitness, unwillingness, or persistent failure to administer the trust effectively, where removal best serves the interests of the beneficiaries.

75. Defendants' failure for more than nine years to perform the central dispositive direction of both instruments is a serious breach of trust. Their refusal of every demand for performance, their failure to render a single report, their concealment of accounts, and their answer that Plaintiff could take whatever action he considered necessary establish unwillingness and persistent failure to administer effectively.

76. Removal of Defendants as trustees of the separate trust to be created for Plaintiff's share, and the appointment of an independent trustee of that separate trust, best serves Plaintiff's interests, because the final mandatory distribution becomes due upon his attaining the age of 45 and will otherwise be measured by the same methods as the first two.

WHEREFORE, on Count V, and in the alternative, Plaintiff demands judgment removing Defendants Gust Callas and Richard K. Warfield as trustees of the separate trust to be established for Plaintiff's share, and appointing an independent trustee of that separate trust.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Justin P. Rudin demands judgment against Defendants Gust Callas and Richard K. Warfield, jointly and severally, as follows:

A. Compensatory damages in an amount to be proved at trial and not less than $242,500.82, plus prejudgment interest;

B. An order compelling Defendants to create and fund a separate trust for Plaintiff's benefit holding 20 percent of the trust property of the George Callas Revocable Trust and 20 percent of the trust property of the Athena Callas Revocable Trust, and to deliver its administration to an independent trustee;

C. An order compelling Defendants to render to Plaintiff a full accounting of each trust for each year from the death of George Callas through the date of judgment, including the source and amount of each Defendant's compensation;

D. Disgorgement of every profit either Defendant made by reason of the breaches alleged, and reduction or denial of Defendants' compensation to the extent of Plaintiff's interest;

E. In the alternative, removal of Defendants as trustees of the separate trust to be established for Plaintiff's share and appointment of an independent trustee;

F. Plaintiff's costs, expenses, and reasonable attorney fees under R.C. 5810.04 ; and

G. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Daniel A. McGowan

Daniel A. McGowan (0064127)
LAW OFFICE OF DANIEL McGOWAN, LLC
600 Superior Avenue E, Suite 1300
Cleveland, Ohio 44114
Telephone: (216) 242-6054
Email: dan@mcgowanlawohio.com

Attorney for Plaintiff Justin P. Rudin